Joseph Power for the plaintiff appellant. I would ask that I have three minutes in rebuttal, Your Honor. Okay. Let's proceed. Thank you, Your Honor. Thank you. Your Honor, this is a case that was dismissed on the basis of form not convened, as this court is well aware of the evidentiary standard that the plaintiff starts out ahead, and the form the plaintiff chooses should rarely be disturbed, except under exceptional circumstances under the Supreme Court guidelines. I would ask that I have three minutes in rebuttal, Your Honor. Thank you. Thank you, Your Honor. I would ask that I have three minutes in rebuttal, Your Honor. I would ask that I have three minutes in rebuttal, Your Honor. Thank you.  The form not convened, counsel cites a number of cases on this issue. The Burbitt case involving Sears, there were no witnesses in Cook County. The Doughty case, no witnesses in Madison County. The Grigley case, no witnesses in Cook County. Moore case, no witnesses in Cook County. The Peel case, no witnesses in St. Clair County. The Quaid case, no witnesses in Cook County. The Saddwick case, no witnesses except a lawyer's consulting physician in Cook County. Skidmore, no witnesses in Illinois. That was transferred to Missouri. The Smith case, no witnesses in Cook County. The Washington case, no witnesses in Madison County. So those are the cases they cite where there's no witnesses. In this case, there's no less than 49 witnesses identified in the state of Illinois. And in fact, if you get to the heart of this case, which was totally disregarded by the trial court, which we start at page 8 through 11, our brief, this case is all about training. This case is all about policies and procedures. By the time the criminal activity takes place in Wisconsin, it's too late. It's like, do you put the fence at the top of the hill to prevent the crime, or do you put an ambulance at the bottom of the hill after it happens? No, this needed to be prevented here in Illinois. This is where their headquarters is. This is where all the training is. This is the audit partner in charge of this engagement team at an office here in Chicago. She had no less than 80 trips here to Chicago, Melissa Capple. But despite that, despite the fact that they represent all Grant Thornton employees, they represent the former employees, according to the discovery disclosures, not one affidavit to suggest Chicago, Cook County is inconvenient. Land and Horse requires that. Instead, in this case, the trial judge developed a different standard. If you look on page 7 of the opinion, he decides that Wisconsin is now, quote, unquote, more readily accessible without citation authority. That's not the standard here. The cases of this district, the Vivas case that Your Honor wrote, that's not the standard at all. The standard is, in fact, the plaintiff's choice of forum is typically deferred to. And if you look at the Wisniewski case, in an interest state transfer case, Wisniewski says in terms of interest state transfer, which this case is, that it's more important to sue someone on a forum issue in their home court, in their home forum. That's a more important factor than when the occurrence, where the occurrence took place. That's more important. That's what we did here. We sued them where they're licensed. We sued them where they're a citizen. They can't claim that they're inconvenienced, and not one iota of evidence, not one affidavit to suggest that this forum is inconvenient. And since Land and Horse, there's been no case to suggest that isn't their evidentiary burden. In this case, the court abused his discretion because what he did is he created this low threshold. He says now that Milwaukee is more readily accessible. That's low. That's not the standard. He abused his discretion because he created a standard without citation of authority, ignoring the Supreme Court as well as this court. That is not the threshold. The threshold is it's their burden to prove through evidence, through affidavits, to show that this is an inconvenient forum of all the people of Grant Thornton they represent, of all the former employees of Grant Thornton, not one affidavit to suggest that this is an inconvenient forum. I would suggest, as the Land and Horse suggested, if they can have affidavits, they have time to supply affidavits, which they did in this case. Not one affidavit said it's inconvenient. That's because no one would sign it to suggest it was inconvenient. In fact, the only evidence in this case regarding convenience are depositions of Amy Hazelin, started on the record on 1405, and Meg Haffer, H-A-F-E-R, that's in the record, started in 1501. They said it's not inconvenient to come to Chicago. And they're Grant Thornton employees. That's the only evidence in the record from their employees saying it's not inconvenient, and the Cross employees have submitted affidavits saying it's not inconvenient to be here in Cook County. And so there's no evidence. So this would be a new standard disregarding not only Langdon Horse, disregarding not only the Cradle Society case, the Irwin case, every case that we cite in our brief, and create a new standard, which this trial court said that he decided it's more readily accessible to go to Milwaukee. That's inappropriate, without citation, contrary to the decisions of this court as well as the Illinois Supreme Court. And I don't know how he got to that. He said that most of the witnesses are not in Milwaukee. That's a done deal. We know she stole it. She pled guilty. She's in jail. That's a done deal. They didn't even discover it. This was discovered by American Express later on. They didn't even discover it. It's because of their inadequate policies and procedures, their inadequate manual, and their poor training. And if you look at starting on page 8 through 11 of our brief, we talk about the complaint, the first complaint. We talked about the failure to train, the failure to adopt proper policies and procedures. Counsel, if I can just interrupt you for a moment. I mean, did the judge even address that part of your complaint in his ruling? He did not. He just briefly, briefly touched upon it. Did not even talk about all the witnesses that we identified in this case. We identified that out of the list of witnesses, there were six of the eight of the people who created the audit manuals and audit service bulletins are here in Chicago, at the Chicago office, at their headquarters. Of the instructors who trained the engagement team, the people that were part of this engagement team, 35 from Illinois. Thirty-five of them. And he's saying most of the witnesses are in Wisconsin. That's over. By the time this happened, over a four- or five-year period of time, we don't need to go back there and prove what happened. We know she pled guilty. We know what happened there. It was here is the heart of this case. And Klaus suggested, Grant Thornton suggested to Klaus that these people are properly trained. They understand the generally accepted auditing standards that are referred to as GASS, G-A-S-S. They're trained in GASS. They know how to do audits. They know all these things. That's what they suggested to Klaus. Well, all the training is done either here in Chicago or out in St. Charles at the Q Center. All the training, all the policies, all the procedures, all the manuals are developed either here in Chicago or out in St. Charles. All the training. And to suggest that the witnesses, I mean, she's in jail out east. Certainly she's not going to be a witness. And there's not one, most importantly, there's no evidence, not one piece of paper in this record to suggest it's easy, it's inconvenient to come here. I suggest it's because they send ads here, the ads on TV. Come to Wisconsin. It's enjoyable. Thousands of people every weekend go to Wisconsin, Door County, well beyond Milwaukee. And now for them to turn around and say, oh, it's hard for us to come to Illinois. It's inconvenient when their own headquarters are here. They're licensed here. They're a citizen of Illinois, not a citizen of Milwaukee. It would be unprecedented to take this case and affirm it when this is where they are. They're from Illinois. They're licensed, limited partnership, citizen state of Illinois. And as the Wisniewski case said, it's incongruous for someone who's sued in their home county, in their home state, to suggest it's inconvenient and there's not one piece of evidence in this case that's inconvenient. And the trial judge even admitted it on page seven of his opinion. I recognize there's no affidavits in this case. There's not only no affidavits, the evidence is to the contrary by the two witnesses, Amy Hesling and May Hafford, that it's not. It's not inconvenient to come to Cook County. The partner in charge of this audit, Melissa Capple, in fact, has traveled no less than 80 times to Chicago during this period of time. Eighty times. Eighty times. So they did not have one piece of evidence. Contrary to law. Now, these are good lawyers. You know, this is a wonderful law firm. They know what they're doing. They couldn't get one person who worked for them to suggest Chicago's inconvenient. For whatever reason. And maybe they can explain it. But if you look at the record, and I've been through this whole record, all I've read are our affidavits, the cost company affidavits, as well as the depositions of their employees saying it's not inconvenient to come to Cook County. They have not met their evidentiary burden of proof in this case. And I would suggest respectfully that the case should be reversed and remanded for trial here in Cook County. Thank you. May it please the Court. Wynton Childs on behalf of the Affiliate Grant Thornton LLP. I want to start by talking briefly about the standard review, if I could. In this case, Judge Taylor allowed discovery over a period of several months. He received extensive briefing, five affidavits, heard argument, and issued a written order that identified the legal standard in Quirine, specifically acknowledged the exceptional circumstances attest to Quirine, but found that the specific factors identified as relevant in that case and in the other precedents strongly favored trial of this case in Wisconsin. Ultimately, the arguments that COSS is making here are arguments about the weight to give particular factors and not arguments about the legal standard. In fact, if legal... Tell us, what is our legal standard here? I'm sorry? What is our legal standard? The legal standard is, after considering the deference that is due, and I'll mention that in a moment, whether the trial court abused its discretion in finding that the public and private factors strongly favor a trial in Wisconsin. The level of deference that is due is very limited because this is an out-of-state plaintiff. They've cited many cases involving Illinois plaintiffs. There is substantial deference that's due in those cases. Those cases don't apply here, and the judge below recognized that. I think it's very important to focus on the standard because the trial judge is in the best position to understand the most significant issues in the case. And after extensive briefing and argument and consideration of the affidavits, the trial court determined that 17 out of the 18 witnesses who actually did the audit work that is at issue in the case are in Wisconsin, that the witnesses from the company, the audit client, are in Wisconsin, and that the witnesses, the accountants who are witnesses, are Wisconsin-licensed CPAs. The trial court attached great significance to those factors, and that was not an abuse of discretion. The trial court considered the arguments about training and considered the arguments about the national headquarters and determined that those issues were secondary. And he was entitled to do that because he is in the best position to do that. And we've cited in our briefs the Kerdaglanian case, the Ferguson case, the Kahn case, the Smith v. Jewell case, the Kwasniewski case. In all of those cases, the courts talked about witnesses who were identified but who were determined to be not clearly relevant or significant or potentially a red herring. That's the language that was used in the Kwasniewski case. Here, all of these witnesses that COSS has identified in the national office or in the training function are witnesses that could be cited, I suppose, as witnesses in any case about any audit that Grant Thornton did anywhere in the country. Grant Thornton has offices in 26 states and the District of Columbia. They do hundreds of audits every year. And there's nothing specific that links any of the witnesses about training or the national office to these audits. And I think what they've really done is they've realized that saying the corporate headquarters are here is not enough under Gridley and under Burbig and under a whole line of cases. And so they've said not only is the corporate headquarters here, but all the people who work at the corporate headquarters are also here. How about the appellant's argument that there was not even one affidavit that said that this is an inconvenient part? Your Honor, I think they are confusing the convenience factor with the ease of access to sources of evidence, which is a separately identified private factor. And I'm not aware of any case that would say that, for example, with respect to the 18 auditors, we would have to submit affidavits from 18 people talking about the personal level of inconvenience. In fact, the interest rate for nonconvenience cases, for example, between different counties in Illinois, you know, almost all of those cases talk about distance and talk about the inconvenience of requiring people to travel, especially for a lengthy trial, which this would be. And I don't think any of the cases they've cited establish that the personal level of inconvenience perceived by the individual witness is mandatory. In some cases, people may put that in. A judge may consider it. A judge may say, if he wants to see that, I'd like to see that. But I don't think it is the absence of that evidence requires reversal for abuse of discretion. I would also say that as a practical matter, probably almost everyone in Milwaukee or northwest Indiana has been to Chicago. So to suggest that it has to be some sort of great hardship, or else the case stays here would basically gut the form nonconvenience doctrine as it exists in the case law and the cases that we've cited. I think what they've done here, frankly, is reminiscent of what happened in the Herring v. Chicago Northwestern case, where the plaintiff, there were occurrence witnesses to an accident in a county downstate, and the plaintiff said, but here's a list of 250 people who work at the Chicago Northwestern Railroad's corporate headquarters in Chicago. And some of those people might somehow be relevant to my case. I can't tell you how yet, but it's 250 to four, so I win. And that's not how that case came out. In that case, the court rejected that argument. Here, some of the training people that they've cited, as we've noted in our brief, I mean, these are people who taught training courses in 2010 or 2011, years after this. They haven't done any linkage of the training and national office, purported training and national office witnesses to the actual facts of this case. If I could talk briefly about the public factors, because I think those can get overlooked, but they're important. In fact, I think they're equally important in the case law with the private factors. The CPAs who did the work are licensed in the state of Wisconsin. They are subject to discipline in the state of Wisconsin, just like lawyers would be if they've committed misconduct. There are administrative rules and regulations, which we cite in our brief, which govern the conduct of accountants who are licensed in the state of Wisconsin. I don't think it can be seriously disputed that Wisconsin has a very strong interest in this case and that it is superior to any interest that Illinois has. Once again, CASA said, well, Illinois might have an interest because their corporate headquarters are here. With all respect, I don't think Illinois has an overriding interest in the litigation of any case brought against Grant Horne from anywhere in the country, which is the logical conclusion of their argument. The court congestion factor is another public factor that Judge Taylor cited. I don't think I need to tell you that the courts in Cook County remain congested and that the trial court under the case law is entitled to consider that factor and rely on it. When I looked through the record, I couldn't find any evidence as to the two courts that Wisconsin works any faster than Illinois. In fact, I thought the evidence went the other way. The evidence that was submitted, and I believe it is cited in our brief. Yeah, there is some evidence in the record. We submitted the most recent information from the administrative offices. The number of cases coming in versus the number of cases. Correct. And I think that was in favor of Cook County. Well, no. Their argument was that more cases are disposed in Cook County, but the evidence in terms of the age of cases, I think that's the other way. Oh, no. I didn't find any evidence of the ages of the cases. I only saw that Cook County disposes of them faster. So I don't see how you could argue that it's more favorable to have it in Wisconsin on that basis. Okay. And I think Judge Taylor also noted, and I think appropriately, that to place the burden on the citizens of Cook County to try a case that fundamentally involves events that took place in Wisconsin involving Wisconsin licensed professionals would be another public factor that would favor a transfer of the case, or dismissal of the case, I should say, under Rule 236. So to conclude, I think, well, let me mention one other private factor briefly, and that is in addition to the ease of access, which is really a distinct factor from convenience, ease of access to witnesses. The other factor that Judge Taylor cited, which he found was an additional factor that cut in favor of Wisconsin, was that the witnesses in Wisconsin are not subject to compulsory process to come to Illinois, and that even witnesses who are currently employed by the parties, by the time this case gets to trial, if they are no longer employed by the parties, would not be subject to compulsory process. And that's been specifically cited in some of the cases cited in our brief as an appropriate consideration that the trial judge may consider. So to conclude, considering all of the public and the private factors, we would submit that Judge Taylor was clearly within his broad discretion. He identified the correct legal standard. He applied the public and private factors to the facts that were before him. The cases that CASA cited that involved product liability cases or a dispersal of witnesses across many states or even different countries are distinguishable, and this Court could not say that the trial court reached an unreasonable conclusion, which ultimately is the standard of discretion. Therefore, we would request that the order granting the motion to dismiss based on format. Thank you. Part of the problem with the court congestion factors is they cited that Cook County had over 300,000 cases, including small claims, non-jury trials, everything you can think of, which isn't true. It was less than a fifth of that are cases over 50,000 in law jury, jury trials. And there is no way to compare in terms of duration, because Milwaukee doesn't keep statistics in terms of how long it takes for a case to go through the system, unlike Cook County. So what we were left to do is say how many cases were disposed of as of the last date. We have the statistics, and Cook County was more efficient in disposing of cases that were over 50,000 in our jury trials than was Milwaukee. That's how it's broken down. They have over 300,000 cases, including small claims. It isn't pertinent. They didn't meet their burden of proof. That was ignored, frankly. When we talk about accountants and licensing, it's too late. It's too late when we get to Milwaukee and that particular problem. This isn't an accounting case. We're not going after a CPA's license. It more has to do with Graham Thornton and what they didn't do here in Illinois in respect to inadequate training, respect to inadequate policies, procedures, and manuals. As you can see, which is in our brief, our first brief, we point it out. That was the heart of the case. It's what happened here. It's not what happened there. That's the bottom line. When counsel talks about Wisniewski, Wisniewski is a case, they said, where there was a third-party witness in Wisconsin. The accident happened in Wisconsin. The case was filed in McHenry County, and the court said you can take an evidence step if the person isn't willing to commit. In the cases they cite about evidence steps, they're saying they're inadequate. Well, that was before we've done video evidence steps. So video evidence steps are very effective, used commonly in these courtrooms these days in the 21st century. They're citing cases back to the 80s and 70s regarding depositions before video evidence depositions. In respect to the issues regarding the Grigley case, the Grigley case had to do with a Louisiana action, Louisiana plaintiff making a claim under the Illinois Consumer Fraud Act. That particular case was decided by Avery before Grigley, where Avery said that someone from another state does not have a right to an Illinois Consumer Fraud Act account. And so that was dismissed. All that was left was an unjust enrichment claim, which State Farm handles on a state-to-state basis. So the court said, in Grigley, there's nothing here for us to decide. You don't have a Consumer Fraud Act case in Illinois when you're an out-of-state plaintiff. So that's gone. All that's left is unjust enrichment. That will be decided under Louisiana law in respect to salvage value, because that's all Louisiana. So there was no case. So that's Grigley. It had nothing to do with this case. The Wisniewski case is a case, as I said, it was in favor of the plaintiff. The plaintiff had a right to sue in Illinois, even though the accident happened in Wisconsin. Counsel cites that in his favor. He's wrong. It was decided for the plaintiff, said you can take an evidence step. And they said when the plaintiff turns around and sues you on your home court, in your home forum, that's more important than where the cause of action occurred. So Wisniewski is a case that's in favor of reversing this judge. And most importantly, in terms of, in addition, Burbank versus Sears, he cited Minnesota occurrence, manufacturing in South Carolina, no witnesses in Cook County identified. So that has nothing to do with this particular case. Neither the trial judge nor counsel can distinguish any case since Langdon Horse. And most importantly, in the Cradle Society case, they talk about affidavits. It says, nevertheless, a burden of proof lies with defendants on this issue. We will not speculate about a witness's whereabouts or unwillingness where AAN has not yet in Illinois, citing Brandt versus Rosen. Trial court was not free to speculate about possible unwillingness of unnamed witnesses who would have to travel from Missouri to Illinois. And they cite Ferguson saying, court not required to speculate about current whereabouts or willingness to testify. It's right on point. That's the law. Since Langdon Horse, that is the law. It's their burden. They did not meet that burden. The judge didn't deal with that. He recognized they didn't have an affidavit that they filed, but yet he created a different standard which we think is inappropriate without any citation authority because there is no authority. The standard is not which is more readily accessible. The standard is, first of all, they have the burden of proof to show inconvenience. They did not meet their evidentiary burden of proof. Secondarily, the judge just ignored the facts that there's over 40 witnesses identified here in Illinois. You have the same problem as this court has pointed out in the Vivas case. You're going to have the same problem wherever you are. If you have people like in the case involving Motorola here where you have people in Arizona, you have people in Texas, you have people in Illinois, you're going to have that problem wherever you are. You have to take evidence depositions, and that's how it is in every case that's handled in this jurisdiction. So for these reasons, I respectfully suggest that the trial court ignored the law, ignored Langdon Hearst, ignored the Brandt case, ignored the Irwin case, ignored the Cradle Society case, and decided this case using a relaxed evidentiary standard which is not recognized in Illinois law. I respectfully request that this court reverse trial court and remand for trial in Cook County. Thank you, ladies and gentlemen. Thank you very much for giving us a very interesting case. The cases were very well briefed, very well presented, and we'll take the case under advisement. Court is adjourned.